### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| AARON ARCHY, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : CIVIL NO. 11-905 (NLH) |
| | : |
| PERRY PHELPS, Warden, and JOSEPH | : **OPINION** |
| R. BIDEN, III, Attorney General | : |
| of the State of Delaware, | : |
| | : |
| Respondents. | : |
| | : |

---

**APPEARANCES:**

AARON ARCHY, Petitioner
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

    *Pro se*

GREGORY E. SMITH, Esquire
Deputy Attorney General
Delaware Department of Justice
Wilmington, DE 19801

    *Attorney for Respondents*

**HILLMAN**, District Judge

Pending before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Aaron Archy ("Petitioner"). (D.I. 1)  For the reasons set forth below, the Court will dismiss the Petition and deny the relief requested.

### BACKGROUND

In November 2005, Petitioner met with Tiron Warrington and

Matthew Hall on the front steps of Warrington's mother's house, located in the Riverside Housing Project in Wilmington.  While there, Warrington made several sales of heroin.  Later, two other men joined the group, and the five men continued to congregate near the front of the house.  Archy v. State, 976 A.2d 170 (Table), 2009 WL 1913582, at *1 (Del. July 6, 2009).

Luis Perez, another drug dealer, appeared at the intersection of East 27th and Claymont Streets and walked past the group towards Bowers Street.  As he passed, he called out a greeting, and Petitioner, also known as "A-Rod," responded in a friendly manner and then walked with him down East 27th Street towards Bowers Street.  The two men turned left at Bowers Street and walked out of sight from the rest of the group.  A few seconds later, a gunshot was heard.  Id.

Warrington testified that he and Hall ran to the courtyard behind the row of houses, saw Perez on the ground, and saw Petitioner walking in their direction.  Id.

During their investigation of Perez's death, police found a .380 caliber cartridge casing near Perez's foot.  An autopsy revealed that Perez had been shot once, at close range, in the right side of his head.  Upon removal, the bullet was determined to be .380 caliber.  On December 3, 2005, police executed a search warrant for the Warrington household.  During the search, police found heroin and twelve rounds of nine millimeter

ammunition.  Warrington's sister was indicted for possession of these items and later pled guilty to possession of heroin.  Id.

In a statement made to police on December 5, 2005, Warrington recounted that as Perez walked down East 27th Street, he shouted a greeting to Petitioner, saying: "Is that Dusty Ass A-Rod?"  Id.

Petitioner was arrested on December 6, 2005, and indicted on the following charges on December 27, 2005: (1) first degree murder; (2) possession of a firearm during the commission of a felony; and (3) possession of a deadly weapon by a person prohibited.  In March 2007, a seven day jury trial in the Delaware Superior Court resulted in an a hung jury and a mistrial.  A second seven day jury trial was held in May 2008, which resulted in Petitioner's convictions on all charges.  In August 2008, the Delaware Superior Court sentenced Petitioner to a total of life imprisonment without the possibility of parole, plus thirty-three years of incarceration.  Petitioner filed a notice of appeal, and the Delaware Supreme Court affirmed his convictions and sentence.  Id.

On June 4, 2010, Petitioner filed in the Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  The Superior Court denied the motion, and the Delaware Supreme Court affirmed that decision on post-conviction appeal.  See Archy v. State, 27 A.3d

3

550 (Table), 2011 WL 4000994 (Del. Sept. 8, 2011)(re-argument <u>en banc</u> denied Sept. 26, 2011).

Petitioner timely filed the instant Petition, which asserts that defense counsel provided ineffective assistance for failing to: (1) request an alibi jury instruction; (2) request a "falsus in uno, falsus in omnibus" jury instruction; (3) request a lesser-included jury instruction related to the charge of first degree murder; and (4) file a motion for judgment of acquittal. Respondents filed an Answer, asserting that the Petition should be dismissed in its entirety because all four Claims lack merit. (D.I. 12)  The Petition is ready for review.

<u>**STANDARD OF REVIEW**</u>

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  <u>Woodford v. Garceau</u>, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted).  Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court

convictions are given effect to the extent possible under law."
Bell v. Cone, 535 U.S. 685, 693 (2002);  see Woodford, 538 U.S.
at 206.

If a state's highest court adjudicated a habeas petitioner's
claim on the merits, then the federal district court must review
the claim under the deferential standard contained in 28 U.S.C. §
2254(d).  A claim has been "adjudicated on the merits" for the
purposes of 28 U.S.C. § 2254(d) if the state court decision
finally resolves the claim on the basis of its substance, rather
than on a procedural or some other ground.  Thomas v. Horn, 570
F.3d 105, 115 (3d Cir. 2009).  Pursuant to § 2254(d), federal
habeas relief may only be granted when the state court's decision
was "contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States," or the state court's decision was an
unreasonable determination of the facts based on the evidence
adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2);  Williams v.
Taylor, 529 U.S. 362, 412 (2000);  Appel v. Horn, 250 F.3d 203,
210 (3d Cir. 2001).  Even a summary adjudication of a claim on
the merits "unaccompanied by an opinion explaining the reasons
relief has been denied" is entitled to § 2254(d) deference.
Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 784-85
(2011).

When reviewing a habeas claim under § 2254(d), a federal

court must presume that the state court's determinations of
factual issues are correct.  28 U.S.C. § 2254(e)(1);  <u>Appel</u>, 250
F.3d at 210.  This presumption of correctness applies to both
implicit and explicit findings of fact, and can only be rebutted
by petitioner upon a showing of clear and convincing evidence to
the contrary.  28 U.S.C. § 2254(e)(1);  <u>Miller-El v. Cockrell</u>,
537 U.S. 322, 341(2003)(stating that the clear and convincing
standard in § 2254(e)(1) applies to factual issues, whereas the
unreasonable application standard of § 2254(d)(2) applies to
factual decisions);  <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286 (3d
Cir. 2000).

## **<u>DISCUSSION</u>**

Petitioner presented the instant four ineffective assistance
of counsel claims to the Delaware Supreme Court on post-
conviction appeal, and the Delaware Supreme Court denied the
claims as meritless.  In these circumstances, the Court must
determine whether the Delaware Supreme Court's decision was
either contrary to, or an unreasonable application of, clearly
established Supreme Court precedent, or was an unreasonable
determination of the facts based on the evidence presented.  <u>See</u>
28 U.S.C. § 2254(d).

The clearly established Supreme Court precedent governing
ineffective assistance of counsel claims is the two-pronged
standard enunciated by <u>Strickland v. Washington</u>, 466 U.S. 668

(1984) and its progeny.  See Wiggins v. Smith, 539 U.S. 510
(2003).  Under the first Strickland prong, a petitioner must
demonstrate that "counsel's representation fell below an
objective standard of reasonableness," with reasonableness being
judged under professional norms prevailing at the time counsel
rendered assistance.  Strickland, 466 U.S. at 688.  Under the
second Strickland prong, a petitioner must demonstrate "there is
a reasonable probability that, but for counsel's error the result
would have been different."  Id. at 687-96.  A reasonable
probability is a "probability sufficient to undermine confidence
in the outcome."  Id. at 688.  Although not insurmountable, the
Strickland standard is highly demanding and leads to a "strong
presumption that the representation was professionally
reasonable."  Strickland, 466 U.S. at 689.

Notably, the Court must apply a doubly deferential standard
of review when analyzing an ineffective assistance of counsel
claim under § 2254(d)(1).  "The pivotal question is whether the
state court's application of the Strickland was unreasonable.
This is different from asking whether defense counsel's
performance fell below Strickland's standard."  Richter, 131
S.Ct. at 785.  In other words, when viewing a state court's
determination that a Strickland claim lacks merit through the
lens of § 2254(d), federal habeas relief is precluded "so long as
fairminded jurists could disagree on the correctness of the state

court's decision." Id. at 786.

In Petitioner's case, the Delaware Supreme Court correctly identified the Strickland standard and analyzed the instant four ineffective assistance of counsel claims within its framework. Therefore, the Court concludes that the Delaware Supreme Court's denial of Claims One through Four is not contrary to Strickland.[1] See Williams, 529 U.S. at 406.

As for whether the Delaware Supreme Court's denial of Claims One through Four constituted a reasonable application of the Strickland standard to the facts of Petitioner's case, the Court will review each claim in seriatim.

_____

[1] In order to satisfy the prejudice prong of Strickland, a prisoner must only demonstrate a "reasonable probability" that the outcome of his trial would have been different but for counsel's error.  When denying Claims Two and Four on post-conviction appeal for failure to satisfy the prejudice prong of Strickland, the Delaware Supreme Court omitted the modifying phrase "reasonable probability" and, instead, stated that Petitioner failed to establish "that the outcome of his trial would have been different had the jury been instructed that it could assign no weight to a witness' testimony" (Claim Two) and that Petitioner failed to establish "that the outcome of his trial would have been different had his trial counsel filed a motion for judgment of acquittal" (Claim Four).  Archy, 2011 WL 4000994, *2.  However, the Delaware Supreme Court properly included the modifying "reasonable probability" phrase in its earlier recitation of Strickland's prejudice standard.  See Archy, 2011 WL 4000994, at *1-2.  Viewing the Delaware Supreme Court's decision in its entirety demonstrates that the State Supreme Court understood and applied the correct Strickland prejudice standard when reviewing Petitioner's Claims. Consequently, the slightly imprecise wording in the Delaware Supreme Court's denial of Claims Two and Four does not render its decision contrary to Strickland.  See, e.g., Williams v. Beard, 637 F.3d 195, 233 at n.30.

### A.   Claim One: Failure To Request An Alibi Instruction

During his state post-conviction proceeding, Petitioner contended that defense counsel provided ineffective assistance by failing to request a jury instruction on alibi.  The Superior Court rejected this argument for failing to satisfy both prongs of the Strickland standard.  First, the Superior Court held that defense counsel's decision not to request an alibi instruction constituted a reasonable trial strategy and, therefore, did not rise to the level of deficient performance as contemplated by Strickland's first prong.  Archy, 2011 WL 4000994, at *6.  The Superior Court also held that the second Strickland prong was not satisfied because Petitioner failed to show how counsel's use of the alibi instruction would have changed the outcome of the trial.  Id.  The Delaware Supreme Court affirmed the Superior Court's decision, specifically holding that "trial counsel's decision not to request an alibi instruction was reasonable as a matter of trial strategy."  Id. at *1.

Claim One of the instant Petition asserts the same ineffective assistance of counsel claim regarding counsel's failure to request an alibi instruction.[2]  However, after

---

[2] Pursuant to well-settled Delaware law, an alibi defense is "a denial of any connection with the crime . . . and is based upon evidence that the defendant was somewhere other than at the place the crime is alleged to have been committed."  Gardner v. State, 397 A.3d 1372, 1373 (Del. 1979).  Additionally, in Delaware, an alibi instruction is only required when there is some credible evidence to establish an alibi defense.  Id. at

reviewing Petitioner's argument through the doubly deferential lens of the § 2254(d) standard, the Court concludes that Claim One does not warrant habeas relief.  The trial evidence established that Warrington and Perez were drug dealers competing with each other for business in the same neighborhood.  The evidence also established that Petitioner was not a drug dealer, and suggested that Petitioner and Perez were actually friendly with each other.  Although Petitioner's grandfather, grandmother, and aunt provided Petitioner with an alibi by testifying that he was at home with them at the time of the shooting, there were numerous other non-relative witnesses, including two friends who were present before and after Perez was killed, who placed Petitioner in the vicinity of the murder at the time of the shooting.

This record demonstrates the reasonableness of counsel's strategy to emphasize Petitioner's lack of motive and focus on both Warrington's motive for shooting Perez and his ability to carry out that shooting given his presence in the vicinity at the time of the shooting.  Moreover, the substantial inconsistencies between the alibi testimony and the testimony offered by other non-relative witnesses demonstrates the reasonableness of counsel's determination that requesting an alibi instruction would have highlighted the alibi testimony and have likely

---

1374.

detracted from the stronger defense theory that Petitioner was
not the shooter even if was present at the murder scene.

Based on the foregoing, the Court concludes that the
Delaware Supreme Court reasonably applied <u>Strickland</u> in holding
that counsel's decision not to request an alibi instruction
constituted a reasonable trial strategy.  Accordingly, the Court
will deny Claim One.[3]

### B.   Claim Two: Failure To Request A Particular Witness Credibility Instruction

At the close of Petitioner's trial, the trial court
instructed the jury as follows:

> You are the sole judges of the credibility of each witness
> who has testified and of the weight to be given to the
> testimony of each.  If you should find the evidence in this
> case to be in conflict, then it is your sworn duty to
> reconcile the conflict if you can, so as to make one
> harmonious story of it all.  If you cannot reconcile these
> conflicts, then it is your duty to give credit to that
> portion of the testimony which you believe is worthy of
> credit, and you may disregard that portion of the testimony
> which you do not believe to be worthy of credit.
>
> In considering the credibility of witnesses and in
> considering any conflict in testimony, you should take into
> consideration each witness' means of knowledge; strength of
> memory and opportunity for observations; the reasonableness
> or unreasonableness of the testimony; the consistency or
> inconsistency of testimony; the motives actuating the
> witness; the fact, if it is a fact, that the testimony has

_____

[3] Moreover, to the extent Petitioner argues that counsel was
constitutionally required to request an alibi instruction because
he put on an alibi defense by calling Petitioner's three
relatives to testify, the argument is unavailing.  The failure to
give a specific alibi instruction is not necessarily a
constitutional violation.  <u>See</u> <u>Echols v. Ricci</u>, 2012 WL 2928479,
at *11-12 (3d Cir. July 19, 2012).

been contradicted, the witness' bias or prejudice or
interest in the outcome of this litigation; the ability to
have acquired the knowledge of the facts to which the
witness testified; the manner and demeanor upon the witness
stand; and the apparent truthfulness of the testimony as
well as all other facts and circumstances shown by the
evidence which affect the credibility of the testimony.

Archy, 2011 WL 400994, at *1-2.

In his state post-conviction proceeding, Petitioner

contended that the instruction given by the trial court

constituted an incorrect statement of the substantive law,

because the instruction failed to "cover the knowing use of

perjured testimony regarding material facts."  Using this

contention as his premise, Petitioner argued that defense counsel

should have requested the following "falsus in uno, falsus in

omnibus" jury instruction: "If you find that any witness

testified falsely about any material fact, you may disregard his

testimony, or you may accept such parts of it as you wish to

accept and exclude such parts of it as you wish to exclude."

(D.I. 1 at 79);  Archy, 2011 WL 4000994, at *7 n.42.  After

reviewing the record and defense counsel's Rule 61 affidavit in

response, the Superior Court concluded that: (1) the jury

instruction provided by the trial court constituted a correct

statement of the law; (2) the instruction was substantially

similar to the instruction proposed by Petitioner, because both

instructions required the jury to reconcile those portions of

testimony in conflict with other testimony and allowed them to

12

give testimony the weight the jury believed appropriate; and (3) nothing about the "falsus in uno, falsus in omnibus" instruction would have provided the jury with a more fair or adequate instruction than what was given.  <u>Archy</u>, 2011 WL 4000994, at *7. Given these determinations, the Superior Court held that counsel did not provide ineffective assistance for choosing to allow the credibility instruction provided over the one preferred by Petitioner.  <u>Id.</u>  The Delaware Supreme Court affirmed that decision, because Petitioner did not establish "that the outcome of his trial would have been different had the jury been instructed that it could assign no weight to a witness' testimony."  <u>Id.</u> at *2.

Now, in Claim Two, Petitioner again contends that defense counsel was ineffective for failing to ask the trial court to provide the "falsus in uno, falsus in omnibus" instruction informing the jury that it could totally disregard a witness' testimony.  This argument is unavailing.

To begin, the Court is bound by the Delaware Supreme Court's conclusion that the trial court's credibility instruction constituted a correct statement of Delaware law despite the court's failure to specifically address the issue of false testimony.  <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-8 (1991)).

In addition, both instructions (the proposed "falsus in uno,

falsus in omnibus" instruction and the general credibility
instruction provided by the trial court) offered the jury the
right and the duty to accept what they found credible, and reject
that which they did not find credible.  For instance, the trial
court alerted the jury to the possibility of false testimony by
clearly instructing it to consider "the apparent truthfulness of
the testimony as well as all other facts and circumstances shown
by the evidence which affect the credibility of the testimony."
In other words, the trial court's general credibility instruction
addressed Petitioner's concerns about perjury.  Given these
circumstances, Petitioner cannot demonstrate a reasonable
probability that the result of his trial would have been
different but for counsel's failure to request his proposed
"falsus in uno, falsus in omnibus" instruction, nor can counsel
be said to have provided ineffective assistance by failing to
request an unwarranted jury instruction.  <u>See</u> <u>United States v.
Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999)(an attorney does not
provide ineffective assistance by failing to raise meritless
objections or arguments).  Accordingly, the Court concludes that
the Delaware Supreme Court's denial of the instant Claim
constituted a reasonable application of <u>Strickland</u>.

**C.  Claim Three:  Failure To Request Lesser-Included Jury
Instructions Related To First Degree Murder Charge**

Petitioner next contends that counsel should have requested
a jury instruction regarding the lesser included offenses of

14

first degree murder, namely, second degree murder, manslaughter, and criminally negligent homicide.  The Delaware Supreme Court denied this argument as meritless because there was no factual basis in the record to support a lesser included offense instruction.  Archy, 2011 WL 4000994, at *7.

After reviewing the record, the Court concludes that the Delaware Supreme Court's decision involved a reasonable application of Strickland.  First, requesting a lesser included offense instruction would have been inconsistent both with Petitioner's argument in Claim One of this proceeding that counsel should have pursued an alibi defense, and the actual defense theory presented at trial, namely, that even if Petitioner was present during Perez's murder, Petitioner was not the shooter.  Given this conflict between the defense theories and a lesser included offense instruction, and the possibility that the jury would have been confused by the presentation of such conflicting theories, the Court concludes that defense counsel reasonably opted against a lesser included offense instruction.  See State v. Deshields, 2007 WL 1748658 (Del. Super. Ct. May 31, 2007)(counsel's choice not to instruct on lesser included offenses so as not to present conflicting theories to jury and thereby maintain credibility with the jury was found to not substantiate a claim for ineffective assistance of counsel despite the fact the lesser included offenses might

have been supported in fact).

Moreover, the facts of Perez's death did not warrant an argument for an offense lesser than intentional killing. The murder weapon was a gun; Perez was shot in the side of his head at close range; Perez was unarmed; and there was no struggle or controversy between Perez and the shooter beforehand. Nothing in these facts provides a rational basis for finding that Petitioner acted recklessly in causing Perez's death, a necessary element for finding Petitioner guilty of second degree murder or manslaughter, and nothing in these facts suggests that Petitioner was experiencing an extreme emotional disturbance when the intentional killing occurred, another basis for finding a person guilty of manslaughter.[4]  Similarly, the record offers no basis

---

[4] In Delaware, a person is guilty of second degree murder when he "recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life," or when, while "engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person, with criminal negligence, causes the death of another person."  Del. Code Ann. tit. 11, § 635(a)(b).  A person is guilty of manslaughter when he "recklessly causes the death of another person" or, "with intent to cause serious physical injury to another person," he "causes the death of such person, employing means which would to a reasonable person in the defendant's situation, knowing the facts known to the defendant, seem likely to cause death," or he "intentionally causes the death of another person under circumstances which do not constitute murder because he act[ed] under the influence of extreme emotional disturbance."  Del. Code Ann. tit. 11, § 632 (1)(2)(3).  And finally, a person is guilty of criminally negligent homicide when he causes the death of another; fails to perceive a risk that his conduct could result in death; and his failure to perceive the risk "constitutes a gross deviation from the standard of conduct that a reasonable

on which a rational juror could find Petitioner guilty of
criminally negligent homicide.

In short, if the jury accepted the alibi testimony provided
by Petitioner's relatives, or accepted the theory presented at
trial that Petitioner did not shoot Perez even if Petitioner was
present at the murder scene, the jury could have returned a
verdict of acquittal.  However, a conviction for the lesser
included offenses of second degree murder, manslaughter, or
criminally negligent homicide would have required pure
speculation by the jury concerning the manner of Perez's death,
and was not supported by any rational basis in the evidence.
Given these circumstances, the Delaware Supreme Court reasonably
applied Strickland in holding that counsel did not provide
ineffective assistance by failing to request an unwarranted
lesser included offense jury instruction.

Accordingly, the Court concludes that Claim Three does not
warrant habeas relief.

### D.  Claim Four: Failure To Move For Judgment Of Acquittal

State witness Dekevis Johnson was housed in prison with
Petitioner in May 2006.  In March 2007, Johnson gave a police
statement asserting that Petitioner told him the details of the

---

person would observe in the situation."  Del. Code Ann. tit. 11,
§§ 231(d), 631.  The difference between the original offense of
first degree murder and the lesser-included offenses is the
defendant's state of mind.

shooting during their incarceration, including Petitioner's role as the shooter.  Johnson also testified during both of Petitioner's trials (March 2007 and May 2008) that Petitioner told him the details of the shooting, including Petitioner's role as the shooter.  However, during Petitioner's May 2008 trial, Johnson also stated: (1) he was high when he gave his March 2007 statement to Detective Campos and was therefore unable to remember all the details that statement; and (2) he made up the story he told the police.  After this revelation, the State conducted the following re-direct examination:

> State: Mr. Johnson, you testified at a prior proceeding with regard to this case; correct?
>
> Johnson: Yes.
>
> State: And in that prior proceeding, that same tape [of Johnson's police statement] was played; correct?
>
> Johnson: Yes.
>
> State: And today you said it was a true and accurate statement of what Petitioner told you; correct?
>
> Johnson: Yes.
>
> State: And today you said that you made up the part about the .38; correct?
>
> Johnson: Yes.
>
> State: And that it was a revolver?
>
> Johnson: Yes.
>
> State: But Petitioner told you it was a .38?
>
> Johnson: He didn't say a specific gun, no.

State: He didn't say it specifically?

Johnson: No.

(D.I. 14 App. to Appellant's Op. Br. in <u>Archy v. State</u>, CA No. 423,2008, at A205-A206)

During Petitioner's post-conviction proceeding, Petitioner argued that counsel should have filed a motion for judgment of acquittal at the close of the State's case because there was insufficient evidence to support his conviction. Petitioner provided several arguments for this theory, one of which was that Dekevis Johnson's admission during Petitioner's May 2008 trial constituted perjury, thereby rendering Johnson's testimony inadmissible. The Delaware Superior Court rejected Petitioner's claim that counsel was ineffective for failing to file a motion for judgment of acquittal after determining that there was sufficient evidence for the jury to conclude that Petitioner murdered Perez. The Superior Court explained that,

> [w]hile motive is unclear, [Petitioner] was the only person in the vicinity of the murder and one State's witness provide the jury with testimony that [Petitioner] told the witness details of the shooting and admitted to shooting the victim. Because the trial judge, after hearing the evidence against [Petitioner], would not be likely to grant a motion for judgment of acquittal, failure to make such a motion is not ineffective assistance.

<u>Archy</u>, 2011 WL 4000994, at *8. The Delaware Supreme Court affirmed this decision on post-conviction appeal, opining "that there was sufficient evidence presented at trial from which any reasonable juror could have found [Petitioner] guilty beyond a

reasonable doubt." Id. at *2.

In Claim Four of this proceeding, Petitioner alleges that counsel should have filed a motion for judgment of acquittal at the close of the State's case because Johnson's perjured testimony demonstrates the insufficiency of the evidence used to convict him. Petitioner supports this argument with the fact that Johnson admitted during the May 2008 trial that he was high on drugs when he gave his statement to Detective Campos in March 2007, and that he just made up the entire story. (D.I. 1 at 62-64)

The standard for assessing whether a motion for judgment of acquittal is appropriate is "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt." Monroe v. State, 596 A.2d 1345, 1355 (Del. 1991). In this case, the record amply supports the Delaware State Courts' finding that there was sufficient evidence to convict Petitioner. For instance, Johnson's March 2007 police statement and his testimony during both trials regarding the details of the shooting corroborated both the physical evidence as well as the testimony provided by other witnesses. In turn, witnesses Dianna Ray and Shiree Willis both testified that they observed Perez and another man walk down the street and turn the corn. Notably, these two witnesses did not affirmatively testify that Petitioner was not

present at the scene; rather, they stated that they were unable to identify the man accompanying Perez.  Moments after Perez and Petitioner turned the corner, Ray and Willis heard a gunshot. Their testimony was corroborated by Warrington and Hall, who both testified that they observed Petitioner greet Perez in the street and then accompany him around the corner.  After Warrington and Hall heard the gunshot, they ran to the scene and observed Petitioner walking away from Perez's body.  When Warrington questioned Petitioner about why he shot Perez, Petitioner replied that he did it for "his peoples."

When viewed in context with the foregoing evidence, Petitioner's instant challenge to Johnson's testimony fails to establish that "any rational trier viewing the evidence in the light most favorable to the State could not find a defendant guilty beyond a reasonable doubt."  As a result, the Court concludes that the Delaware Supreme Court reasonably determined that there was sufficient evidence to support Petitioner's convictions.  <u>See</u> § 2254(d)(2).  Given this determination, Petitioner cannot demonstrate a reasonable probability that the trial judge would have granted a motion for judgment of acquittal on the basis of insufficient evidence even if defense counsel made such a motion.  Accordingly, the Court concludes that the Delaware Supreme Court reasonably applied <u>Strickland</u> in affirming the Superior Court's denial of Claim Four.

## CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability.  See 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2);  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  In the Court's view, reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court declines to issue a certificate of appealability for these claims.

## CONCLUSION

For the reasons discussed, Petitioner's Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.


Dated: January 25, 2013               s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---

AARON ARCHY,                          :
                                      :
              Petitioner,             :
                                      :
     v.                               : CIVIL NO. 11-905 (NLH)
                                      :
PERRY PHELPS, Warden, and JOSEPH      :          **ORDER**
R. BIDEN, III, Attorney General       :
of the State of Delaware,             :
                                      :
              Respondents.            :
                                      :

---

        For the reasons set forth in the Memorandum Opinion filed

herewith,

        **IT IS** this 25th day of January, 2013;

        **ORDERED** that Petitioner Aaron Archy's Petition For A

Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (D.I. 1) is

**DISMISSED,** and the relief requested therein is **DENIED;** and it is

further

        **ORDERED** that a certificate of appealability will not be

issued, because Petitioner has failed to satisfy the standards

set forth in 28 U.S.C. § 2253(c)(2); and it is further

        **ORDERED** that the Clerk shall close the case.


                                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.